Filed 12/20/22  P. v. Miller CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>CHARLES THOMAS MILLER,<br><br>　　Defendant and Appellant. | G060745<br><br>(Super. Ct. No. 21HF0792)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jacki C. Brown, Judge.  Affirmed and remanded for resentencing with directions.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Charles Thomas Miller guilty of arson and one misdemeanor count each of unlawfully causing a fire and vandalism. In his opening brief, Miller argues (1) there was insufficient evidence of his identity as the perpetrator of the offense of unlawfully causing a fire and (2) the trial court erred by failing to award him presentence conduct credits under Penal Code section 4019. (All further statutory references are to the Penal Code.) After initial briefing, we granted Miller's request to file a supplemental brief in which he argued the upper term sentence imposed on the arson count should be vacated and the matter remanded for resentencing in light of retroactively applicable amendments to section 1170, subdivision (b) that became effective during the pendency of this appeal.

We affirm the judgment of conviction. Substantial evidence shows Miller was the one who committed the misdemeanor offense of unlawfully causing a fire. We remand the matter to the trial court for full resentencing in accordance with the amendments to section 1170 and further direct the court to award Miller presentence conduct credit under section 4019.

## FACTS[1]

### I.

### THE MORNING FIRE

Around 10:30 a.m. on April 18, 2021, Newport Beach Police Officer Quinton McKay was dispatched to respond to a fire burning in a parking lot near a shuttered COVID-19 testing structure. After he arrived, he deployed a fire extinguisher to keep the fire, which was about six feet by eight feet in size, from spreading; it was a warm, dry, and windy day. Newport Beach Fire Department personnel arrived on the scene shortly thereafter and extinguished the fire within a few minutes.

---

[1] Our summary of facts is limited to those relevant for the resolution of the issues presented in this appeal.

Newport Beach Fire Captain Dennis Edwards was also dispatched around 10:30 a.m. that day to investigate the fire. During his investigation, Edwards concluded the fire had been intentionally set. He observed burned burrito wrappers next to 15 burned palm tree fronds that appeared to have been bundled together on the ground; he did not observe any other palm tree fronds in the parking lot or the surrounding area. Edwards further concluded, based on his examination of the fire's burn patterns, the fire had been started by igniting the burrito wrappers.

Around 11:30 a.m., McKay approached Miller, whom he had observed lying on a patch of grass near the Taco Bell restaurant on the property adjacent to the site of the fire. Miller had miscellaneous items scattered around him, including art supplies, clothes, cigarettes, and a large collection of lighters of all different types, colors, and mechanisms of operation. There were also bottles filled with what was later determined to be lamp fluid.

Miller told McKay he had recently arrived back in town after visiting friends and had been alone in "the relative area all morning" hanging out and "doing art"; he said he liked the shade of the tree located on the Taco Bell property. He also told McKay that he had purchased three different types of burritos from Taco Bell for lunch.

Miller explained the fire had been too big when he got there to be stomped out at that point. He mentioned that he thought it was weird palm tree fronds were in such close proximity to each other in the same area where the fire was located. McKay testified Miller had to have been close to the fire to be able to see the palm tree fronds as McKay himself did not see them until after the fire was extinguished. McKay did not arrest Miller or anyone else in connection with the fire at that point in time.

II.

THE AFTERNOON FIRE

Later that same day, around 3:00 p.m., Ruben Ramirez was driving by the same Taco Bell when he noticed smoke in the parking lot and saw a man he identified as

3

Miller watching the flame of a fire while "standing right in front of it." Miller was holding in his right hand a medium sized lighter that looked like the type of lighter used for barbequing.

Miller was out of Ramirez's sight for about 45 seconds while Ramirez made a U-turn and returned to the fire where he saw Miller continuing to stand in front of the flame and staring. Miller's demeanor was calm; he did not attempt to extinguish the fire. He no longer held a lighter in his hand.

Ramirez called 911. While he was on that call, Ramirez saw Miller walking away from the fire toward Pacific Coast Highway. Ramirez tried to make contact with him by calling out "'yo,'" but Miller said nothing and continued to walk away. Two other men who were walking in the area followed Miller until a police officer arrived, at which time they pointed Miller out to the officer.

McKay received a call around 3:19 p.m. to respond to the second fire of the day in the vicinity of the Taco Bell. He observed the second fire to be along the north side of the Taco Bell parking lot—a location within yards of the first fire earlier that day. He further observed the second fire spanned about 60 feet in width and height; the hillside behind the parking lot was on fire and the fire appeared to be going up the hill toward residences.

McKay discovered graffiti that appeared to have been written in ash from the end of a burnt branch etched on a nearby wall. The graffiti had not been on the wall earlier that day. Burned branches that looked like palm tree fronds lay near that wall.

Edwards was also dispatched to the second fire. He concluded this fire had also been intentionally set. When Miller was taken into police custody, he was observed to have black ash smeared on his face, arms, and legs.

4

PROCEDURAL HISTORY

Miller was charged in an information with one count of arson (the morning fire) in violation of section 451, subdivision (d) (count 1); one count of arson (the afternoon fire) in violation of section 451, subdivision (d) (count 2); and one count of vandalism in violation of section 594, subdivisions (a) and (b)(2)(A) (count 3). The information alleged, pursuant to sections 667, subdivisions (d) and (e)(1) and 1170.12, subdivisions (b) and (c)(1), that Miller had been previously convicted of a serious and violent felony, and that, pursuant to section 667, subdivision (a)(1), he had been convicted of a prior serious felony listed in section 1192.7.

The jury found Miller guilty of unlawfully causing a fire in violation of section 452, subdivision (d), a lesser included misdemeanor offense of count 1. The jury also found Miller guilty on counts 2 and 3 as charged in the information. In a bifurcated trial, the trial court found the prior felony conviction sentencing enhancement allegations true.

The trial court sentenced Miller to a total prison term of 11 years by imposing a six-year term on count 2 (double the upper term pursuant to sections 667, subdivisions (d) and (e)(1) and 1170.12, subdivisions (b) and (c)(1)); and a five-year term for the prior conviction found true under sections 667, subdivision (a)(1) and 1192.7. The trial court also ordered Miller to serve a total of 10 days in the Orange County jail for the lesser included offense of count 1 as well as for count 3; the court deemed Miller's jail sentence served. The court awarded Miller 167 actual days of credit for presentence custody, but the court awarded no presentence conduct credit. The court's minutes show Miller's counsel objected to the court's denial of a presentence conduct credit award. Miller appealed.

5

DISCUSSION

I.

SUFFICIENCY OF THE EVIDENCE

Miller contends his conviction for unlawfully causing a fire in violation of section 452[2] must be reversed because insufficient evidence shows he was the one who set the morning fire upon which that misdemeanor conviction is based.  For the reasons we explain, sufficient evidence supports the jury's finding Miller caused the morning fire.

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  Our review must presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  Even where, as here, the evidence of guilt is largely circumstantial, our task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might reasonably be reconciled with the defendant's innocence.  [Citations.]  It is the duty of the jury to acquit the defendant if it finds the circumstantial evidence is susceptible to two interpretations, one of which suggests guilt and the other innocence.  [Citation.]  But the relevant inquiry on appeal is whether, in light of all the evidence, 'any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'  [Citation.]" (*People v. Zaragoza* (2016) 1 Cal.5th 21, 44.)

Here, more than sufficient evidence supports the jury's finding that Miller was the one who caused the morning fire.  The evidence shows that fire was intentionally set; Miller does not contend otherwise.  Burrito wrappers placed near 15 bundled palm

---

[2]  Section 452 provides in relevant part:  "A person is guilty of unlawfully causing a fire when he recklessly sets fire to or burns or causes to be burned, any structure, forest land or property."

tree fronds were ignited to start the fire.  Within an hour of the extinguishment of the fire, McKay approached Miller who McKay had observed lying on grass a short distance from the fire.  Miller admitted to McKay that he had been in that area all morning (and thus had been in the area when the fire started) and had purchased three burritos from Taco Bell (and had thereby admitted possession of the type of material that had been used to ignite the morning fire).

In addition, Miller had commented to McKay that he thought the arrangement of palm tree fronds was weird.  By his comment, Miller showed, at a minimum, he saw the fire in its earlier stages (as McKay testified he himself did not see the bundled palm tree fronds until after the fire had been extinguished).

Most significantly, a variety of lighters and lamp fluid were found among Miller's possessions a short time after the morning fire.  A few hours later, a lighter was observed in Miller's hand as he stood before a second fire the jury found he had started— a fire burning only yards from where the first fire had been set.  Miller was observed calmly staring into the flames before he turned around and walked away, ignoring Ramirez's efforts to get his attention.

Because we conclude substantial evidence supports Miller's conviction for unlawfully causing a fire, Miller's due process argument premised on the insufficiency of the evidence necessarily fails.

II.

THE TRIAL COURT ERRED BY FAILING TO AWARD PRESENTENCE CONDUCT CREDITS

"A defendant may 'accrue both actual presentence custody credits under . . . section 2900.5 and conduct credits under . . . section 4019 for the period of incarceration prior to sentencing.' [Citation.]  The calculation of actual credits is performed by simply adding together 'all days of custody' the defendant has served. (§ 2900.5, subd. (a).)  In contrast, the calculation of conduct credits depends on the purpose for which they are being calculated.  Under section 4019, a defendant can earn

7

two conduct credits for every two actual credits. . . . We independently review whether a trial court has correctly applied these statutes in awarding custody credits. [Citation.]" (*People v. Arevalo* (2018) 20 Cal.App.5th 821, 827.)

At the sentencing hearing, the trial court awarded Miller credit for 167 days of actual time served and acknowledged Miller's counsel "has argued that he would be entitled to local good time/work time credits on that 167 days." The trial court did not award Miller any presentence conduct credits, explaining: "My reading of Penal Code [section] 667 is that he cannot accrue good time/work time credits until he actually commences serving in the prison, at which time he will then be able to accrue the appropriate additional credits." Miller's counsel responded: "I'm objecting to that, that he's entitled to that."

Miller argues the trial court erred by failing to award him presentence conduct credit under section 4019; the Attorney General concedes the court so erred. As explained by the Attorney General in the respondent's brief, the *limitation* on conduct credits provided under former section 667, subdivision (c)(5), cited by the trial court, along with former section 1170.12, subdivision (a)(5) "applies only after a defendant commences serving his time in state prison." As explained by the California Supreme Court in *People v. Buckhalter* (2001) 26 Cal.4th 20, 32: "[R]estrictions on the rights of Three Strikes prisoners to earn term-shortening credits do not apply to confinement in a local facility prior to sentencing. . . . [W]hen limiting the credit rights of offenders sentenced thereunder, the Three Strikes law (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)) expressly refers only to '*post*sentence . . . credits,' i.e., those '"awarded pursuant to [a]rticle 2.5"' [citation], and 'does not address *presentence* . . . credits' for Three Strikes defendants [citations]."

The trial court therefore erred by failing to award Miller presentence conduct credit. In his opening brief, Miller argues he should have been awarded 167 days of presentence conduct credit. In the respondent's brief, the Attorney General,

8

citing *People v. Whitaker* (2015) 238 Cal.App.4th 1354, 1358 (*Whitaker*), argues: "Under the version of section 4019 effective on the date of the offenses, [Miller] was entitled to two days of conduct credit for every four days actual custody served but a term of four days will be deemed to have been served for every two days spen[t] in actual custody. [Citation.] Respondent agrees that this formula generally equates to day-for-day credit. However, a 'defendant who serves an odd number of days is not entitled to an additional single day of conduct credit for his or her final day of actual custody.' [Citation.] Accordingly, [Miller] is entitled to 166 days of conduct credit." In his reply brief, Miller states he "accepts that the correct number of pre-sentence conduct credit days is 166."

In *Whitaker, supra*, 238 Cal.App.4th at page 1358, the appellate court explained: "The statutory language expressly and clearly declares the Legislature's intent that four days will be deemed served for every two days in actual custody. Given that section 4019, subdivisions (b) and (c) both authorize one day of credit for each four-day period of confinement, section 4019, subdivision (f)[3] must be interpreted to authorize two days of credit for each four-day period of confinement. Section 4019 thus requires that a defendant actually serve two days in custody before he or she will be entitled to two additional days of conduct credit. A defendant who serves an odd number of days is not entitled to an additional single day of conduct credit for his or her final day of actual custody." (Italics omitted.) The *Whitaker* court concluded the trial court had "properly applied the two-for-two formula in calculating that [the defendant] was entitled to 326 days of conduct credit for his 327 days served." (*Id.* at p. 1362.)

---

3 Subdivision (f) of section 4019 provides: "It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody."

9

Here, Miller was awarded 167 days of presentence custody credits. He was therefore entitled to 166 days of presentence conduct credit under section 4019, subdivision (f).

III.

WE REMAND FOR RESENTENCING IN LIGHT OF AMENDMENTS TO SECTION 1170

After initial briefing, we granted Miller's request to file a supplemental brief in which he argues this case must be remanded for resentencing in accordance with recent amendments to section 1170. For the reasons explained *post*, we remand the matter for full resentencing.

When Miller was sentenced in October 2021, the trial court had broad discretion under the then-current version of section 1170, subdivision (b) (former section 1170, subdivision (b)), to decide which of the tripartite terms of imprisonment to impose for an offense. (See former § 1170, subd. (b); *People v. Sandoval* (2007) 41 Cal.4th 825, 846-847 (*Sandoval*).) Exercising its discretion under former section 1170, subdivision (b), the trial court imposed the three-year upper term on Miller's arson conviction. Citing as factors in aggravation under rule 4.421(a)(1) and (b)(2) of the California Rules of Court, the court stated (1) Miller's conduct disclosed "a high degree of callousness to the safety of people and property"; and (2) Miller had numerous prior convictions, although "not of increasing seriousness." The court also found Miller's age (67 years) to be a circumstance in mitigation. None of the cited factors was found true by the jury.

During the pendency of Miller's appeal, on January 1, 2022, Senate Bill No. 567 amended section 1170 to provide, inter alia, that the middle term is the presumptive sentence, unless section 1170, subdivision (b)(2) provides otherwise. (§ 1170, subd. (b)(1).) Section 1170, subdivision (b)(2) now provides in relevant part: "The court may impose a sentence exceeding the middle term *only* when there are circumstances in aggravation of the crime that justify the imposition of a term of

10

imprisonment exceeding the middle term, *and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial*." (Italics added.) Subdivision (b)(3) of section 1170 creates an exception to the limitation imposed by subdivision (b)(2), providing: "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

As this case is not yet final, Miller is entitled to the retroactive application of section 1170, subdivision (b), as amended by Senate Bill No. 567. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 ["section 1170's current statutory language applies retroactively in all nonfinal cases" and "[a]ll published cases to consider this issue have found likewise"]; *People v. Whitmore* (2022) 80 Cal.App.5th 116, 131; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

As discussed *ante*, the trial court relied in part on its finding Miller's conduct disclosed a high degree of callousness to impose the upper term sentence. The California Supreme Court has explained "to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*Sandoval, supra*, 41 Cal.4th at p. 840.) Whether a defendant's conduct discloses "a high degree of . . . callousness" within the meaning of rule 4.421(a)(1) of the California Rules of Court can be vague and subjective, "requir[ing] an imprecise quantitative or comparative evaluation of the facts" (*Sandoval, supra*, 41 Cal.4th at pp. 840-841).

In addition, we are mindful of the *Sandoval* court's caution that "a reviewing court cannot always be confident that the factual record would have been the same had aggravating circumstances been charged and tried to the jury." (*Sandoval,*

11

*supra*, 41 Cal.4th at p. 840.) Nevertheless, even as limited to the state of the record before us, we cannot conclude, beyond a reasonable doubt, that the jury would have found, beyond a reasonable doubt, that Miller demonstrated a high degree of callousness in the commission of the arson offense. (See *id.* at p. 841.) Therefore, that circumstance in aggravation found by the trial court (instead of a jury as required by section 1170, subdivision (b)(2) as amended) cannot be considered as support for the court's imposition of the upper term sentence for the arson offense.

The Attorney General argues that even if the high degree of callousness circumstance in aggravation cannot support Miller's upper term sentence, remand is unnecessary because the trial court also relied on the aggravating factor that Miller had suffered numerous prior convictions within the meaning of rule 4.421(b)(2) of the California Rules of Court. As discussed *ante*, section 1170, subdivision (b)(3), as amended, permits the trial court *to consider* the defendant's prior convictions based on a certified record of conviction in determining sentencing. (Italics added.) Section 1170, subdivision (b)(3), as amended, does not address whether the court's findings following its review of such a record of conviction alone can justify the imposition of an upper term sentence. The Advisory Committee comment to rule 4.421 of the California Rules of Court does address that issue, stating in part: "In determining whether to impose the upper term for a criminal offense, the court may consider as an aggravating factor that a defendant has suffered one or more prior convictions, based on a certified record of conviction. *This exception may not be used to select the upper term of an enhancement*." (Italics added.)

In any event, the court's finding Miller had numerous prior convictions is somewhat vague and subjective in itself. For example, it is unclear from our record how many prior convictions the court considered to be "numerous" and rule 4.421(b)(2) does not define the term. It is also unclear how the court evaluated the circumstances and seriousness of Miller's numerous prior convictions (although the trial court stated they

12

were not increasing in seriousness) or how the court weighed the fact of Miller's numerous prior convictions (along with the court's finding Miller acted with a high degree of callousness) against the mitigating factor of his age of 67 years in imposing the upper term sentence.

Most importantly, the trial court did not have the opportunity to evaluate and weigh these aggravating and mitigating circumstances in light of the subsequent amendments to section 1170, subdivision (b)(2) that require the imposition of the middle term sentence unless "there are *circumstances* in aggravation of the crime *that justify* the imposition of a term of imprisonment exceeding the middle term." (Italics added.) In other words, under amended section 1170, subdivision (b)(2), the court's finding that Miller had numerous prior convictions alone would be insufficient to support imposing a sentence exceeding the middle term. That circumstance in aggravation must *also* justify the imposition of the upper term.

We acknowledge that since section 1170 was most recently amended, appellate courts have used varying harmless error standards to determine whether a defendant who was sentenced to an upper term under former section 1170, subdivision (b) must be resentenced. (See *People v. Dunn* (2022) 81 Cal.App.5th 394, 408-410, review granted Oct. 12, 2022, S275655 [discussing three different harmless error standards applied by courts in applying amended section 1170].) We do not need to weigh in on that debate and determine whether, for example, it is reasonably probable the court would have imposed a particular sentence in light of the change in the law because the record before us simply does not support the imposition of the upper term in this case.

We therefore vacate Miller's sentence and remand for further proceedings. Before resentencing, the trial court must give the prosecution an opportunity to elect whether to accept resentencing on the current record or seek an upper term sentence in compliance with newly amended section 1170, subdivision (b). Either way, the court shall conduct a "'full resentencing'" on remand (*People v. Buycks* (2018) 5 Cal.5th 857,

13

893) by which the trial court may reconsider all sentencing choices (*People v. Hubbard* (2018) 27 Cal.App.5th 9, 12) and shall apply the terms of other applicable ameliorative legislation that became effective January 1, 2022.  On remand, the parties are free to argue for the disposition they believe is appropriate under the applicable law.  We express no view as to how the trial court should exercise its discretion.

## DISPOSITION

The judgment is affirmed.  The sentence is vacated, and the matter is remanded for the trial court to resentence Miller and to award him presentence conduct credit.  Following resentencing, if appropriate, the trial court clerk shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.


14